| Fill in this information to identify the case: | |
|---|---|
| Debtor name | Bordeaux Farms, LLC |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF VIRGINIA |
| Case number (if known) | 19-60607 |

☑ Check if this is an amended filing

Official Form 425A

# AMENDED Plan of Reorganization for Small Business Under Chapter 11
12/17

Bordeaux Farms, LLC 's Plan of Reorganization, Dated July 23, 2019

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of **Bordeaux Farms, LLC** (the *Debtor*) from [Specify sources of payment, such as an infusion of capital, loan proceeds, sale of assets, cash flow from operations, or future income].

This Plan provides for:
- **0** classes of priority claims;
- **1** classes of secured claims;
- **0** classes of non-priority unsecured claims; and
- **1** classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately **0** cents on the dollar as there are no non-priority unsecured creditors. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

Your rights may be affected. you should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

## Article 2: Classification of Claims and Interests

| 2.01 | Class 1 | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), "gap" period claims in an involuntary case under § 507(a)(3), and priority tax claims under § 507(a)(8)). |
| --- | --- | --- |
| | | NONE |
| 2.02 | Class 2 | The claim of **Spotts Fain, P.C. in the amount of $200,000.00**, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | Class 3 | All non-priority unsecured claims allowed under § 502 of the Code. |
| | | NONE |
| 2.04 | Class 4 | Equity interests of the Debtor. |
| | | **Charles D. Warren, Jr.** |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| 3.01 | Unclassified claims | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| --- | --- | --- |
| | | NONE |
| 3.02 | Administrative expense claims | Each holder of an administrative expense claim allowed under § 503 of the Code, [and a "gap" claim in an involuntary case allowed under § 502(f) of the Code,] will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| | | NONE |

| Debtor | Bordeaux Farms, LLC | Case number (if known) | 19-60607 |
|---|---|---|---|
| | Name | | |

| | | |
|---|---|---|
| 3.03 | **Priority tax claims** | Each holder of a priority tax claim will be paid [Specify terms of treatment consistent with § 1129(a)(9)(C) of the Code]. |
| | | NONE |
| 3.04 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.05 | **Prospective quarterly fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code |

### Article 4: Treatment of Claims and Interests Under the Plan

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☐ Unimpaired | NONE |
| Class 2 – **Secured claim of Spotts Fain, P.C.** | ☑ Impaired<br>☐ Unimpaired | *Total debt compromised pursuant to agreement between the Debtor and the Secured Creditor shall be $200,000.00 with interest at the rate of 6%. The payment shall consist of the following terms.*<br><br>*A monthly interest only payment of $1,000.00 a month from July 26, 2019, to December 23, 2019, at which time the Debtor shall make a lump sum payment of $100,000.00 directly to the Creditor, which said payment shall be received by said creditor not later than December 23, 2019. The remaining payment balance of $100,000 shall be paid with interest of 6% and shall be amortized over 36 months beginning on January 23, 2020 in the amount of $3042.19 a month with the final payment due on or before December 23, 2023, or immediately upon a sale of the Debtor's property, whichever occurs first. The Debtor and creditor have entered into a settlement agreement dated July 26, 2019 and executed by all parties. The settlement agreement is attached to and its terms incorporated by reference into this chapter 11 plan. Confirmation of this Plan shall constitute approval of the Settlement Agreement by the Court and the Settlement Agreement shall thereafter be a binding obligation of all parties thereto.* |
| Class 3 – **Non-priority unsecured creditors** | ☐ Impaired<br>☐ Unimpaired | NONE |
| Class 4 - **Equity security holders of the Debtor** | ☐ Impaired<br>☑ Unimpaired | Charles D. Warren, Jr.- common share stockholder |

### Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claim:** | A disputed claim is a claim that has not been allowed or disallowed by a final nonappealable order, and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim:** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final nonappealable order. |
| 5.03 | **Settlement of disputed claims:** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

| Debtor | Bordeaux Farms, LLC | Case number (if known) | 19-60607 |
|---|---|---|---|
| | Name | | |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | Assumed executory contracts and unexpired leases | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:<br><br>Service Dogs by Warren Retrievers ends 10/31/2019 |
|---|---|---|
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br><br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than  N/A  days after the date of the order confirming this Plan. |

### Article 7: Means for Implementation of the Plan

Payments and distributions under the Plan will be funded by the following: Service Dogs by Warren Retrievers LLC pays rent to the debtor monthly in the amount of $3600.00. The income from this rental lease will provide for the funding of the plan to the creditor provided. The plan may also be funded from sale of real estate owned by Bordeaux Farms, LLC and/or Charitable Occasion, LLC..

### Article 8: General Provision

| 8.01 | Definitions and rules of construction | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:<br>NONE |
|---|---|---|
| 8.02 | Effective Date | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. Counsel for the Debtor shall have 60 days after the entry of the confirmation order to make a final professional fee application. |
| 8.03 | Severability | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | Binding Effect: | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | Captions | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | Controlling Effect | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of  Virginia  govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.] |
| 8.07 | Corporate Governance | If the Debtor is a corporation include provisions required by § 1123(a)(6) of the Code.- **N/A as none are required** |

Debtor  **Bordeaux Farms, LLC**          Case number (*if known*) **19-60607**
      Name

| 8.08 | **Retention of Jurisdiction** | Confirmation of the Plan, except to the extent expressly stated to the contrary in the Plan, shall generally have the effect described in Section 1141. As this is a reorganization plan, the Debtor will receive a discharge pursuant to 11 U.S.C. § 1141(d)(1). All Creditors, parties in interest and interest holders will be bound by the Plan, as confirmed, and will not have claims against the Debtor other than as specifically stated in the Plan. The sole remedy and right of collection of the holders of Claims shall be pursuant to the provisions of this Plan. |
|---|---|---|
| | | Please be advised that by operation of 11 U.S.C. § 1141(c), after Confirmation of the Plan, all property discussed in the Plan will be free and clear of all claims and interests of Creditors and Equity Security Interest Holders of the Debtor unless otherwise provided in the Plan or order confirming the same. You are advised to carefully review and consider the treatment of your Claim(s) under the Plan as your rights may be affected and any liens you hold may be extinguished upon Confirmation of the Plan. |

### Article 9: Discharge

| 9.01 | ☐ | **Discharge if the Debtor is an individual and § 1141(d)(3) is not applicable.** |
|---|---|---|
| | | Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. |
| | ☐ | **Discharge if the Debtor is a partnership and § 1141(d)(3) is not applicable.** On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan. |
| | ☑ | **Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable.** On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: |
| | | (i) imposed by this Plan; or |
| | | (ii) to the extent provided in § 1141(d)(6). |
| | ☐ | **No discharge if § 1141(d)(3) is applicable.** In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case. |

### Article 10: Other Provisions

[Insert other provisions, as applicable.]

> NONE

Respectfully submitted,

**X** /s/ Charles D. Warren, Jr.          Charles D. Warren, Jr.
[Signature of the Plan Proponent]          [Printed name]

**X** /s/ Stephen E. Dunn          Stephen E. Dunn 26355
[Signature of the Attorney for the Plan Proponent]          [Printed name]



DEBTOR EXHIBIT A

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("Settlement Agreement" or "Agreement"), dated as of July 26, 2019, among BORDEAUX FARMS, LLC ("Bordeaux"); CHARITABLE OCCASION, LLC ("Charitable"); CHARLES D. WARREN, JR. ("Warren" and collectively, with Bordeaux and Charitable, the "Debtor Parties") and SPOTTS FAIN PC ("SFPC") (collectively the aforementioned shall be referred to as the "Parties" and individually as a "Party"), recites and provides:

## RECITALS

R-1    Bordeaux Farms, LLC owns the following parcel of real property in Madison County, Virginia (the "Bordeaux Property"):

ALL that certain tract or parcel of land lying and situate in the former Locust Dale Magisterial District of Madison County, Virginia, near Oak Park, Virginia, on Virginia Route 632, containing 158.516 acres, more or less, more particularly shown and described as "A" on a plat of boundary survey by Milton Terry Estes, L.S., dated June 22, 1994, recorded in Plat Book 19 at Page 16.

BEING the same real property conveyed to Bordeaux Farms, LLC by Deed of Contribution from Charles D. Warren, Jr. dated November 4, 2011 and recorded November 7, 2011 as Deed Number 110001531, in the Clerk's Office of the Circuit Court of Madison County, Virginia.

R-2    Charitable Occasion, LLC owns the following parcel of real property in Madison County, Virginia (the "Charitable Property"):

ALL that certain piece or parcel of land lying and being in Madison County, Virginia, containing 74.770 acres, more or less, known as Tax Map Parcel Nos. 42-32 and 42-32A, and shown on a plat of survey made by Parker & Burke Surveyors, P.C., field surveyed 26 October 2006 - 1 December 2006 and platted 5 December 2006, and recorded in the Clerk's Office of the Circuit Court of Madison County, Virginia, in Plat Book 36, at Page 98 and as Instrument Number 120000708, and

LESS AND EXCEPT that certain 1.884 acres, more or less, conveyed to Mark A. Moorstein, Trustee, by Deed of Gift and Boundary Adjustment dated 11 January 2012, recorded 25 January 2012, in the Clerk's Office of the Circuit Court of Madison County, Virginia, as Instrument Number 120000110, and

TOGETHER with a Non-Exclusive Right of Way for the purpose of Ingress and Egress to and from State Route 632, granted to Charlotte A. Jackson by Mark A. Moorstein, Trustee dated 17 January 2012 and recorded in the Clerk's Office of the Circuit Court of Madison County, Virginia, as Instrument Number 120000111, and

1

BEING the same real estate conveyed to Charitable Occasion, LLC by Deed of Bargain and Sale from Charlotte A. Jackson, widowed and not remarried, dated May 31, 2012 and recorded June 1, 2012 as Instrument Number 120000777 in the Clerk's Office of the Circuit Court of Madison County, Virginia.

R-3     On December 20, 2013, SFPC filed a verified Complaint against the Debtor Parties and certain other parties in the Circuit Court for the County of Madison, Virginia (the "Circuit Court") seeking monetary damages, an equitable lien and certain other relief (the "Madison Proceeding"). The Madison Proceeding was assigned Case No. CL13002900-00.

R-4     On December 20, 2013, SFPC recorded a Memorandum of Lis Pendens in the Clerk's Office of the Circuit Court at Instrument No. 130002170 (the "Memorandum of Lis Pendens") as to the Bordeaux Property and the Charitable Property.

R-5     On September 17, 2014, the Circuit Court entered an order (the "Madison Order") granting SFPC a money judgment, an equitable lien (the "Equitable Lien"), the appointment of Ronald DeWitt Wiley, Jr. ("Commissioner Wiley") as Special Commissioner to execute a deed of trust, and certain other relief. The Madison Order was docketed in the Clerk's Office of the Circuit Court at instrument No. 140001130 and is incorporated herein by reference.

R-6     On September 25, 2014, and pursuant to the Madison Order, Commissioner Wiley executed a deed of trust on behalf of Bordeaux and Charitable encumbering the Bordeaux Property and the Charitable Property (the "SFPC Deed of Trust" and, together with the Madison Order, the Equitable Lien and the Memorandum of Lis Pendens, the "SFPC Liens"). On October 2, 2014, the SFPC Deed of Trust was recorded in Clerk's Office of the Circuit Court at Instrument No. 140001217.

R-7     On March 30, 2019, Bordeaux filed a petition for relief in the US Bankruptcy Court for the Western District of Virginia (the "Bankruptcy Court"), case number 19-60607, the "Bordeaux Proceeding".

R-8     On March 30, 2019, Charitable filed a petition for relief in the Bankruptcy Court, case number 19-60609, the "Charitable Proceeding" and, together with the Bordeaux Proceeding, the "Bankruptcy Proceedings".

R-9     The Parties have agreed to enter into a settlement agreement to resolve the issues among them and their affiliates in connection with SFPC's representation of Debtor parties and any of their affiliates, the Madison Proceeding, the SFPC liens and the Bankruptcy Proceedings.

## AGREEMENT

NOW THEREFORE, in consideration of the above recitals and of the promises, covenants, and representations hereafter made, the Parties agree as follows:

1.     **Effect of Recitals.** The Parties agree that the above recitals above are true, are an important part of the consideration for this Agreement and are incorporated herein by reference.

2

2.  **Bankruptcy Court Approval.** This Agreement is subject to approval by the Bankruptcy Court in the Bankruptcy Proceedings. The Parties agree that they will jointly seek approval of the Agreement by the Bankruptcy Court.

3.  **SFPC Allowed Secured Claim.** SFPC shall be granted an allowed, secured claim in the Bankruptcy Proceedings in the principal amount of $200,000, plus interest at the rate of 6% and any future reasonable collection costs and fees (the "Allowed Secured Claim"), secured by the SFPC Liens on the Bordeaux Property and the Charitable Property. All other claims or amounts due or alleged to be due from the Debtor Parties to SFPC, other than the Allowed Secured Claim, shall be disallowed.

4.  **Waiver of challenges to the SFPC Liens.** The Debtor Parties waive any defenses, offsets, recoupments, challenges, disputes, motions to set aside, etc. as to the Allowed Secured Claim and the SFPC Liens on the Bordeaux Property and the Charitable Property.

5.  **Retention of the SFPC Liens.** All of the SFPC Liens on the Bordeaux Property and the Charitable Property as represented by the Allowed Secured Claim shall remain on the Bordeaux Property and the Charitable Property until the Allowed Secured Claim is paid in full, at which time they shall be released.

6.  **Settlement Payment.** As full and final settlement of the Allowed Secured Claim, the Debtor Parties shall pay to SFPC the sum of $200,000, with interest thereon at the rate of 6%, plus any future reasonable collection costs and fees, (the "Settlement Funds"). The Settlement Funds shall be paid to SFPC by or on behalf of the Debtor Parties as follows:

    a.  The payment of $100,000 on or before December 23, 2019, plus 6% interest (by minimum monthly payments of interest only on the full outstanding principal) from July 26, 2019; and
    b.  The payment of $100,000, plus 6% interest amortized over 36 months beginning in January 23, 2020 in the amount of $3042.19 per month with the final payment of all remaining Settlement Funds, including any accrued and unpaid interest, due on or before December 23, 2022, or immediately upon a sale of the Bordeaux Property or the Charitable Property, whichever occurs first.

All payments pursuant to this Agreement shall be in certified funds, made payable to "Spotts Fain PC" and delivered as SFPC may direct, initially to:

SPOTTS FAIN PC
Attn: Robert H. Chappell, III, Esquire
411 E. Franklin St., Suite 600
Richmond, Virginia 23219

7.  **Incorporation into Plans.** The terms of the Settlement Agreement will be incorporated into the proposed plan(s) of reorganization in the Bankruptcy Proceeding, containing terms reasonably acceptable to SFPC.

3

8.   **Early Payment of Settlement Funds.** The Debtor Parties may elect to pre-pay the Settlement Funds at any time.

9.   **Release of Debtor Parties.** For the terms of this Agreement and other good and valuable consideration, upon payment in full of the Settlement Funds, and except for the terms and obligations of this Agreement, SFPC, on behalf of itself and its agents, affiliates, successors, assigns, attorneys, and any other firm, person, corporation or other type of entity claiming by, through or under it, its representatives and assigns, hereby releases and forever discharges the Debtor Parties, and any of their respective agents, affiliates, successors, assigns, attorneys, and any other firm, person, corporation or other type of entity claiming by, through or under it, its heirs, representatives, and assigns from any and all claims, demands, damages, costs, expenses, loss of services, actions or causes of action, claims for action, known or unknown, arising from any act or occurrence commencing from the beginning of time to the execution of this Agreement related to or arising from, in any way, SFPC's representation of Debtor parties and any of their affiliates, the Madison Proceeding, the SFPC liens and the Bankruptcy Proceedings, as specifically provided herein (the "Debtor Party Release").

10.   **Release of SFPC.** For the terms of this Agreement and other good and valuable consideration, and except for the terms and obligations of this Agreement, Debtor Parties, on behalf of themselves and their agents, affiliates, successors, assigns, attorneys, and any other firm, person, corporation or other type of entity claiming by, through or under them, their heirs, representatives, and assigns, hereby release and forever discharge SFPC, its respective officers, directors, employees, stockholders, employees, partners, members, agents, affiliates, successors, assigns, attorneys, and any other firm, person, corporation or other type of entity claiming by, through or under them, their heirs, representatives, and assigns from any and all claims, demands, damages, costs, expenses, loss of services, actions or causes of action, claims for action, known or unknown, arising from any act or occurrence commencing from the beginning of time to the execution of this Agreement, related to or arising from, in any way SFPC's representation of Debtor parties and any of their affiliates, the Madison Proceeding, the SFPC liens and the Bankruptcy Proceedings, as specifically provided herein.

11.   **SFPC to Retain All Settlement Funds.** The Debtor Party Release as contemplated by Paragraph 9 is conditioned on all the Settlement Funds being paid and retained by SFPC as set forth herein. To the extent that any of the Settlement Funds are declared null, void, a preference, or otherwise avoided or transferred away from SFPC, or from those to whom SFPC may have transferred a portion of the Settlement Funds, (the "Potential Avoidance"), then the Defendants shall be in default under this Agreement, the Debtor Party Release as contained in this Agreement shall be null and void and SFPC may seek to pursue any and all remedies upon receipt of relief from any applicable stays or injunctions, to the extent necessary.

12.   **Default, Right of Redemption and Acceleration.** Upon a default of any term of this Agreement, including the failure to timely make a payment, SFPC may pursue any and all available remedies, upon receipt of relief from any applicable stays or injunctions, to the extent necessary.

4

**13.    Release of Liens.**    Upon payment and clearance of all the Settlement Funds, the SFPC Liens shall be satisfied and released of record.

**14.    Notice.** Any notice or other communication required or permitted by this Agreement contemplated hereby shall be in writing and may be delivered: (i) personally; (ii) sent by first class mail; or (iii) by recognized overnight courier <u>and</u> in any case shall also be sent by email to all parties showing an email address below. Any such notice shall be deemed given when so delivered personally, by recognized overnight courier or, if mailed, two days after the date of deposit in the United States mail, as follows:

<u>To SFPC:</u>          Robert H. Chappell, III
                Spotts Fain PC
                411 East Franklin Street; Suite 600
                Richmond, VA 23219
                rchappell@spottsfain.com

<u>With a copy to:</u>     Timothy G. Moore, Esquire
                SPOTTS FAIN PC
                411 East Franklin Street; Suite 600
                Richmond, VA 23219
                tmoore@spottsfain.com

<u>To Debtor Parties:</u>   c/o Charles D. Warren, Jr.
                Po Box 647
                Madison, VA 2272

<u>With a copy to:</u>     Stephen E. Dunn, Esquire
                STEPHEN E. DUNN, PLLC
                201 Enterprise Drive, Suite A
                Forest, VA 24551
                stephen@stephendunn-pllc.com

Any notice given on a Saturday or Sunday or legal holiday as defined in Va. Code § 2.2-3300 (or any successor thereto) shall be deemed to have been given on the next immediately following day that is not a Saturday or a Sunday or a legal holiday. Any party desiring to change his, her or its address for purposes of notice shall give notice of such change of address in the foregoing manner and the effective date of such notice of change of address shall be five calendar days after such notice is given.

**15.    Represented by Counsel/Interpretation.** This Agreement shall not be construed as drafted by either party and shall not be construed against any Party. The undersigned Parties to this Agreement represent and warrant that they have entered into this Agreement knowingly, voluntarily, and intentionally, and they have been represented by counsel or have had the opportunity for representation by counsel during the negotiation of this Agreement, and that they

5

The Parties further agree that this Agreement shall be construed under the "plain meaning" rule of contract interpretation without parole evidence to vary or change the terms hereof.

**16.    Counterparts.** This Agreement may be executed by one or more parties in any number of separate counterparts and all of such counterparts taken together shall be deemed to constitute one and the same instrument. The parties agree that scanned or facsimile signatures shall be considered originals and permitted as electronic signatures under the provisions of the Virginia Uniform Electronic Transactions Act, Va. Code § 59.1-479 et seq.

**17.    No Liability Admitted by the Parties.** All of the Parties to this Agreement acknowledge that they admit no liability of any sort, except as set forth herein, by reason of any disputes between the Parties and that settlement under the terms stated herein is made to terminate any existing and further controversy respecting all claims for damages that the undersigned have against the other.

**18.    Further Documentation.** The Parties hereto agree that they will execute such additional and further documents as in the reasonable opinion of counsel for any of the Parties may be necessary to effect the purposes of this Agreement and which is consistent with the terms hereof.

**19.    Choice of Law.** This Agreement shall be governed in all respects and shall be interpreted in accordance with the laws of the Commonwealth of Virginia.

**20.    The Entire Agreement.** This Agreement constitutes the entire agreement between the Parties hereto and shall not be modified except upon written agreement of the Parties.

**21.    Reservation of Rights.** The Parties hereto otherwise reserve all of their rights, both legal and equitable, against any person or persons not signatory hereto.

**22.    Dispute and Remedies.** In the event of a default hereunder by the Debtor Parties, SFPC shall be entitled to recover reasonable collection fees and costs in connection with the enforcement of its rights or the recovery of the amounts due hereunder The Parties agree that any litigation arising under or related to this Agreement shall be brought in the Bankruptcy Court.

**23.    Severability.** Any part of this Agreement that is invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without, however, rendering invalid or unenforceable the remainder of this Agreement. If any part of this Agreement is so broad as to be unenforceable, the part shall be reformed and interpreted to be only so broad as is enforceable.

**24.    Headings.** Headings where applicable are for convenience in reference only and are not a part of the Agreement.

Witness the following signatures effective as of the date set forth above on the attached pages:

**[REMAINDER OF PAGE DELIBERATELY LEFT BLANK]**

SPOTTS FAIN PC
By: _Robert H. Chappell III_
Its: _Corporate Secretary_

~~STATE~~ Commonwealth OF _Virginia_
CITY/~~COUNTY~~ OF _Richmond_, to-wit:

The foregoing instrument was sworn and acknowledged before me by _Robert H. Chappell, III_ as _Corporate Secretary_ of SPOTTS FAIN PC in my jurisdiction aforesaid this _19th_ day of _August_, 2019.

My commission expires: _06/30/2023_
My commission number: _7101475_

_Emily G. Anderson_
Notary Public

[Notary Seal: EMILY E. G. ANDERSON, NOTARY PUBLIC, MY COMMISSION NUMBER 7101475, COMMONWEALTH OF VIRGINIA]

7

*[signature]* Managing member
Bordeaux Farms, LLC

**BORDEAUX FARMS, LLC**

BY: _____

ITS: _____

STATE OF Virginia
CITY/COUNTY OF Madison , to-wit:

The foregoing instrument was sworn and acknowledged before me by Charles D. Warren Jr. as managing member of BORDEAUX FARMS, LLC, in my jurisdiction aforesaid this 16 day of August, 2019.

My commission expires: April 30, 2022
My commission number: 7583945

*[signature]* Jodi L. Alger
Notary Public

*I was commissioned as a Notary as Jodi L. Milton or the equivalent*

[Seal: JODI LOREEN MILTON, NOTARY PUBLIC, REG. #7583945, COMMONWEALTH OF VIRGINIA, MY COMMISSION EXPIRES APRIL 30, 2022]

*[signature]* Managing member
Charitable Occasion LLC

**CHARITABLE OCCASION, LLC**

BY: _____

ITS: _____

STATE OF Virginia
CITY/COUNTY OF Madison , to-wit:

The foregoing instrument was sworn and acknowledged before me by Charles D. Warren Jr. as managing member of CHARITABLE OCCASION, LLC, in my jurisdiction aforesaid this 16 day of August, 2019.

My commission expires: April 30, 2022
My commission number: 7583945

*[signature]* Jodi L. Alger
Notary Public

*I was commissioned as a notary as Jodi L. Milton or the equivalent*

[Seal: JODI LOREEN MILTON, NOTARY PUBLIC, REG. #7583945, COMMONWEALTH OF VIRGINIA, MY COMMISSION EXPIRES APRIL 30, 2022]

8

Document    Page 13 of 13

_____
CHARLES D. WARREN, JR.

STATE OF Virginia
CITY/COUNTY OF Madison, to-wit:

The foregoing instrument was sworn and acknowledged before me by CHARLES D. WARREN, JR. in my jurisdiction aforesaid this 16 day of August, 2019.

My commission expires: April 30, 2022
My commission number: 7553445

_____
Notary Public

(1) was commissioned a notary
(2) Jodi L. Multon or the equivalent.

9